Citation Nr: 1736720 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-22 712 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for a bilateral knee disability.

2. Entitlement to service connection for a bilateral ankle disability.

3. Entitlement to service connection for a bilateral foot disability.

4. Entitlement to service connection for a right shoulder disability.

5. Entitlement to service connection for a left shoulder disability other than left upper extremity radiculopathy. 

6. Entitlement to an increased rating for service-connected degenerative disc disease (DDD) at C5 with left shoulder pain, currently at 20 percent.

7. Entitlement to an initial increased rating for service-connected left upper extremity radiculopathy associated with DDD at C5 with left shoulder pain, currently at 20 percent.

8. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

S. Becker, Counsel

INTRODUCTION

The Veteran served on active duty from May 1953 to May 1983. This matter comes before the Board of Veterans' Appeals (Board) from a November 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia. It was found therein that new and material evidence had not been received sufficient to reopen a previously denied service connection claim with respect to the Veteran's knees. Service connection with respect to his ankles, feet, and shoulders also was denied therein, as was a rating higher than 20 percent for his service-connected DDD at C5 with left shoulder strain. The Veteran appealed each of these determinations. In October 2015, he testified at a hearing before the undersigned Veterans Law Judge. 

In December 2015, the Board remanded this matter for additional development. This led to an April 2016 rating decision by the Appeals Management Center (AMC), which granted service connection and assigned an initial 20 percent rating effective February 25, 2016, for left upper extremity radiculopathy. The Veteran did not appeal this determination. However, VA has a well-established duty to maximize a claimant's benefits. Buie v. Shinseki, 24 Vet. App. 242 (2011); AB v. Brown, 6 Vet. App. 35 (1993). The issue of entitlement to an increased rating for DDD at C5 with left shoulder pain encompasses the same for associated disabilities, such as left upper extremity radiculopathy. [Accordingly, at this time, the Board has recharacterized the previous issue of entitlement to service connection for a bilateral shoulder disability into claims for service connection for a left shoulder disability other than left upper extremity radiculopathy and for service connection for a right shoulder disability. 

When an increased rating is sought, entitlement to a TDIU due to the service-connected disability or disabilities involved must be considered if raised. Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). A TDIU has been added as an issue by the Board at this time, as the Veteran recently submitted claims, along with supporting evidence, that he is unable to work due to various disabilities including his service-connected DDD at C5 with left shoulder pain and service-connected left upper extremity radiculopathy. 

Further review of the claims file shows that Board adjudication cannot proceed at this time. Another REMAND instead is warranted. Please note this matter has been advanced on the Board's docket. 38 U.S.C.A. § 7107(a)(2) (West 2014); 38 C.F.R. § 20.900(c) (2016).


REMAND

Although the delay entailed by a second remand is regrettable, particularly as this matter has been advanced on the Board's docket, Board adjudication of this matter now would be premature. Undertaking more additional development prior to such adjudication is the only way to ensure that the Veteran is afforded every possible consideration. He must be afforded such consideration. Indeed, VA has a duty to assist him in substantiating his claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). VA has a duty to assist him in gathering evidence that may show he is entitled to the benefits sought, in other words. 
I. Records

The duty to assist includes making as many requests as necessary to obtain pertinent treatment records in government custody, unless they do not exist or further requests would be futile. 38 U.S.C.A. § 5103A(b)(3) (West 2014); 38 C.F.R. § 3.159(c)(2) (2016). The claimant must be asked to submit pertinent private treatment records or provide enough information to identify and locate them along with an authorization for their release. 38 C.F.R. §§ 3.159(c)(1), (e)(2) (2016). If information and authorization is provided, an initial request and if necessary one or more follow-up requests must be made. 38 C.F.R. § 3.159(c)(1) (2016). The claimant shall be notified if any requested records cannot be or are not obtained. 38 U.S.C.A. § 5103A(b)(2) (West 2014); 38 C.F.R. § 3.159(e)(1) (2016).

VA treatment records dated in June 2017 are available. Some are pertinent. So, others that are relevant as well and dated more recently may exist. A request or requests for them must be made. VA indeed has notice of its own treatment records. Bell v. Derwinski, 2 Vet. App. 611 (1992). 

Furthermore, pursuant to the Board's previous remand, the Veteran was asked in February 2016 to identify and authorize the release of pertinent private treatment records. His response, which seemingly was for a TDIU claim but also applies here given that it concerns the same disabilities, was received almost a year later in January 2017. It appears to have been ignored. It now (after scanning into electronic format) also is largely illegible. So, the Veteran must be asked to respond anew. An initial request with a follow-up request(s) as necessary must be made if he does so. Notice to him and his representative finally must be made if any of the aforementioned is unsuccessful.

II. Medical Opinions

If VA obtains a medical opinion for a service connection claim, the duty to assist requires that it be adequate so that adjudication will be fully informed. Barr v. Nicholson, 21 Vet. App. 303 (2007). The service member's entire history therefore must be considered, the factual premises underlying the opinion must be accurate, and there must be a clearly and fully articulated rationale or explanation supporting it. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120 (2007); Ardison v. Brown, 6 Vet. App. 405 (1994); Reonal v. Brown, 5 Vet. App. 458 (1993). 

Pursuant to the Board's previous remand, VA medical opinions concerning the Veteran's ankles and feet were rendered in February 2016. The ankles opinion was addended in July 2016 and September 2016, after a determination that there had not been substantial compliance with the remand directives. Such compliance indeed is mandatory. Stegall v. West, 11 Vet. App. 268 (1998). Unfortunately, it has not been achieved for the Veteran's feet. Continuity of symptoms still has not been discussed as requested. An addendum was ordered by the AMC to cure this omission. Yet none was ever obtained. Though there has been substantial compliance for the Veteran's ankles, further clarification is needed. Part of the rationale was that no diagnosis could be made. A diagnosis of Achilles tendonitis is contained in VA treatment records dated near the time the Veteran filed his claim in 2007, however. Discussion of it is required. McClain v. Nicholson, 21 Vet. App. 319 (2007). Arrangements thus must be made for another addendum.

III. Initial Review of Additional Pertinent Evidence

Pertinent evidence is initially reviewed by the agency of original jurisdiction (AOJ), which in most circumstances is a RO. After certification to the Board, additional pertinent evidence must be referred back to the AOJ for initial review. 38 C.F.R. § 20.1304(c) (2016). Exceptions are when the claimant or his representative waives this review right or when the benefit being sought is allowed in full by the Board. Id. Waiver is presumed, unless otherwise conveyed by the claimant or his representative in writing, with respect to substantive appeals received on or after February 2, 2013. 38 U.S.C.A. § 7105(e)(1) (West 2014).

As directed in the Board's previous remand, the Atlanta RO issued a supplemental statement of the case (SSOC) in April 2017. It included readjudication of the increased rating issue for service-connected DDD at C5 with left shoulder pain. Recertification to the Board occurred in May 2017. Thereafter, pertinent VA treatment records were made available. A pertinent VA medical examination also was performed in July 2017, in the context of a TDIU claim. Another pertinent to the added issue of an increased rating for left upper extremity radiculopathy further was performed then. Neither the Veteran nor his representative has waived the right to have the Atlanta RO review this additional pertinent evidence initially, and such cannot be presumed since the substantive appeal was received prior to February 2, 2013. Finally, the Board cannot fully allow the benefits sought at this time. The Atlanta RO accordingly must conduct initial review.

IV. Inextricably Intertwined

Issues are inextricably intertwined when the determination on one could impact the determination on the other. Harris v. Derwinski, 1 Vet. App. 180 (1991). Adjudication of the potentially impacted issue must be deferred until the issue that may cause the impact has been adjudicated. Id. The service connection and increased rating issues of this matter are unresolved, given this remand for additional development. In other words, whether ratings will be assigned for some disabilities and the level of rating assigned for others remains to be determined. Yet a TDIU is warranted only when service-connected disability or disabilities are rated less than 100 percent. 38 C.F.R. § 4.16(a). Whether a TDIU is considered on a schedular or an extraschedular basis further depends on the level of rating assigned for such disabilities. Id. The issue of a TDIU therefore is deferred as inextricably intertwined pending resolution of the other issues comprising this matter.

Accordingly, a REMAND is directed for the following (please note that expedited handling is requested because this matter has been advanced on the Board's docket):

1. Make as many requests as necessary to obtain all outstanding VA treatment records regarding the Veteran dated from June 2017 to present. Associate all records received with the claims file. Notify the Veteran and his representative of any lack of success regarding the aforementioned, documenting such in the claims file. 
2. Inform the Veteran that his January 2017 authorization to release outstanding pertinent private treatment records to VA (Form 21-4142) is largely illegible. Thus, ask him again to either submit these private records or provide enough information to identify and locate them along with a new authorization. If he does the latter, make an initial request with follow-up as necessary. Associate all records received with the claims file. Notify the Veteran and his representative of any lack of success regarding the aforementioned, documenting such in the claims file.

3. After completion of the above, arrange for an addendum VA medical opinion for the Veteran's ankles to be placed in the claims file. The clinician shall be the same one who rendered the February 2016 opinion as well as the July 2016 and September 2016 addendums, if available. This clinician shall review the claims file and opine as to whether it is at least as likely as not (a 50 percent or greater probability) that Achilles tendonitis as diagnosed in VA treatment records dated near the time the Veteran filed his claim in 2007 is related to his service, whether parachute jumping, running in combat boots, or otherwise. An understandable and thorough explanation must be provided in support of this opinion.

4. Also, after completion of the actions requested in paragraphs 1 and 2 above, arrange for an addendum VA medical opinion for the Veteran's feet to be placed in the claims file. The clinician shall be the same one who rendered the February 2016 opinion, if available. This clinician shall review the claims file and discuss the Veteran's contention of continuous symptoms since service (note - continuous treatment is not required). Next, the clinician shall indicate what impact such has on the previous opinion. In other words, does the opinion stay the same or change? An understandable and thorough explanation must be provided in support of any change. 

5. Lastly, take into account all pertinent evidence (whether previously considered or additional) and readjudicate all service connection and increased rating issues comprising this matter. Then do the same in readjudication the TDIU issue. Issue a rating decision for all determinations that are partially or wholly favorable to the Veteran. For all that are partially or wholly unfavorable to him, issue an SSOC. Place a copy of the rating decision and/or SSOC in the claims file, and provide a copy to the Veteran and his representative. Allow them time to respond to the SSOC before processing for return to the Board.

No action is required of the Veteran until he is notified by VA. However, he is advised of his obligation to cooperate in ensuring the duty to assist is satisfied. Kowalski v. Nicholson, 19 Vet. App. 171 (2005); Wood v. Derwinski, 1 Vet. App. 190 (1991). His failure to help procure treatment records, for example, may impact the determination made. His failure to report for a VA medical examination may have the same impact. 38 C.F.R. § 3.655 (2016). The Veteran also is advised that he has the right to submit additional evidence and argument, whether himself or through his representative. Kutscherousky v. West, 12 Vet. App. 369 (1999). This 




(CONTINUED ON NEXT PAGE)
matter must be afforded prompt treatment. Indeed, all remands by the Board or the United States Court of Appeals for Veterans Claims (Court) are to be handled expeditiously. 38 U.S.C.A. §§ 5109B, 7112 (West 2014). Further, it is reiterated that this matter has been advanced on the Board's docket. 38 U.S.C.A. § 7107(a)(2) (West 2014); 38 C.F.R. § 20.900(c) (2016).




_________________________________________________
THERESA M. CATINO
Veterans Law Judge, Board of Veterans' Appeals

Only a decision of the Board is appealable to the Court. 38 U.S.C.A. § 7252 (West 2014). This remand is in the nature of a preliminary order and does not constitute a decision on the merits of this matter by the Board. 38 C.F.R. § 20.1100(b) (2016).